UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Brian Caraba, D.D.S.,

    Plaintiff,

v.

Paul Revere Life Insurance Company,

    Defendant.

Case No. 21 C 4682

Judge Jorge L. Alonso

## Memorandum Opinion and Order

This case arises from a dispute over disability insurance benefits. Plaintiff Brian Caraba, D.D.S., purchased an individual disability insurance policy from Defendant Paul Revere Life Insurance Company ("Paul Revere"). Caraba applied to Paul Revere for disability benefits in April 2019 after he suffered from musculoskeletal impairments that prevented him from continuing his prior work as a general clinical dentist. Paul Revere paid Caraba disability benefits under a reservation of rights for over a year until September 2020, when it changed course and denied Caraba's claim. According to Paul Revere, Caraba did not meet the policy definition of total disability because, although he could no longer perform his duties as a clinical dentist, he was still engaged in other gainful employment based on his income from teaching and work on behalf of two dental professional organizations. Paul Revere therefore refused to make any further disability payments after September 2020, and this lawsuit followed. Caraba asserts a claim for breach of contract and also seeks damages under § 155 of the Illinois Insurance Code, which provides for statutory penalties and attorney's fees when an insurer is found to have unreasonably and vexatiously denied or delayed in paying a claim.

Pending now are the parties' cross-motions for summary judgment. For the reasons below, the Court grants Paul Revere's motion for summary judgment (ECF No. 29)[1] and denies Caraba's motion for summary judgment (ECF No. 25). In short, the Court concludes Caraba did not meet the policy definition of having a total disability because despite no longer working as a dentist after April 2019 and earning about half of his previous income, he was nonetheless otherwise gainfully employed. Paul Revere thus did not breach the insurance policy by denying Caraba's benefits claim and is entitled to judgment as a matter of law on Caraba's claims.

## Background

Because this case is before the Court on summary judgment, the factual record is largely framed by the parties' Local Rule 56.1 statements of facts, although the Court may "consider other materials in the record" where appropriate. Fed. R. Civ. P. 56(c)(3). Except as otherwise noted, the following represents the undisputed facts based on the parties' Local Rule 56.1 statements and responses.[2]

### A. The Parties and the Relevant Insurance Policy Language.

Caraba is a 53-year-old licensed dentist from Glenview, Illinois. (ECF No. 41 ¶ 3.) Paul Revere is a Massachusetts corporation with its principal place of business in Maine and is licensed to conduct business in Illinois. (*Id.* ¶¶ 1, 4.) The parties agree that this Court has diversity jurisdiction and that venue in this District is proper. (*Id.* ¶¶ 1–2.)

In 1998, Caraba purchased an individual disability income insurance policy from Paul Revere for an annual premium of $1,964.16 (Policy No. 0102899385, hereafter "the Policy").

---

[1] Page numbers in docket citations are taken from the CM/ECF headers, except for deposition testimony, for which the Court cites the internal transcript page and line number.
[2] The Court particularly relies on Caraba's response to Paul Revere's statement of material facts (ECF No. 34) and Paul Revere's response to Caraba's amended statement of facts (ECF No. 41), each of which sets forth the asserted facts and the opposing party's responses in one document.

(*Id.* ¶ 4.; ECF No. 31-1.) The Policy, which is formally labeled as a "Business Executive Disability Income Policy," provided that Paul Revere would pay Caraba benefits of $3,100.00 per month following a 90-day "elimination period" after the onset of a disability, and that benefits would continue until Caraba reached the age of 65 (provided he otherwise remained eligible to receive benefits under the terms of the Policy). (*See id.* ¶ 5.) The Policy also included supplemental benefits of $1,000.00 per month for a period of 365 days following the 90-day elimination period. (*Id.*) Caraba also purchased supplemental social insurance, which provided that the $1,000-per-month additional benefit would continue past the initial 365 period until Caraba reached the age of 65 (provided, again, that he complied with the terms of the Policy and remained eligible for benefits). (*Id.*; ECF No. 34 ¶ 16.)

To receive benefits, an insured such as Caraba must meet the following definition of "Total Disability" contained in the Policy:

> "Total Disability" means that because of Injury or Sickness:
>
> a. You are unable to perform the important duties of your occupation; and
> b. You are not engaged in any other gainful occupation; and
> c. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to us that further Physician's care would be of no benefit to you.

(ECF No. 41 ¶ 6; ECF No. 31-1 at 7.) "Your occupation" is defined under the Policy as "the occupation or occupations in which You are regularly engaged at the time You become Disabled." (ECF No. 34 ¶ 5 ; ECF No. 31-1 at 7.) The Policy does not define the term "gainful occupation." (ECF No. 41 ¶ 87.) The Policy provides that after Paul Revere receives a satisfactory written proof of loss, it will pay periodic monthly benefits subject to a continuing proof of loss and will pay interest at the rate of 8% per year on any benefits it does not timely pay. (ECF No. 41 ¶ 8; ECF No. 34 ¶ 8.)

### B. Caraba's Employment and 2019 Disability Benefits Claim

Caraba contends that he became disabled on April 8, 2019, due to musculoskeletal impairments in his hip and back, after which he applied to Paul Revere for disability benefits. (ECF No. 41 ¶ 10.) Prior to April 2019, Caraba had been self-employed as a practicing dentist. (*Id.* ¶ 9.) Caraba claims he was employed as a dentist on a "full-time" basis prior to his musculoskeletal issues, but Paul Revere disputes that "full-time" characterization based on the undisputed facts that Caraba had other additional employment prior to 2019 working as a teacher and performing duties on behalf of two professional dental associations. (*Id.*) Specifically, Caraba had been teaching first and second-year dental students part-time at Midwestern University's College of Dental Medicine since June 2017. (ECF No. 34 ¶¶ 21–22.) Caraba also served as a "branch director" on the Board of Directors for the Chicago Dental Society since 2018, where he was responsible for attaining and maintaining membership and generally advocating on behalf of the profession, including by advocating for favorable legislation. (*See id.* ¶¶ 28–29.) Additionally, since at least 2018, Caraba has performed work for the Illinois State Dental Society, including teaching classes to dental assistants and engaging in political advocacy for legislation as part of a political action committee. (*See id.* ¶¶ 28, 30; ECF No. 31-15 at 1.)[3]

It is undisputed that due to the musculoskeletal impairments he experienced in April 2019, Caraba stopped working at his dental practice, though he continued to maintain other employment. (ECF No. 41 ¶ 12.) Caraba continued to teach at Midwestern University until October 2021, and he also served on the faculty at the University of Illinois from June 2019 until September 2021. (ECF No. 34 ¶¶ 21, 23.) Caraba also continued his work as a director for the

---

[3] Paul Revere's statement of facts only references Caraba's work for the Illinois State Dental Society since 2018, but the records attached to the statement indicate that Caraba had been receiving income from the organization as far back as 2015. (ECF No. 31-15 at 1.)

Chicago Dental Society until 2020 and continued to perform work on behalf of the Illinois State Dental Society in both 2019 and 2020. (*Id.* ¶¶ 27, 30.)

In terms of Caraba's income before and after he ceased working in his dental practice: Caraba earned $141,288.75 in 2018, which consisted of $72,437.00 from his dental practice and $68,851.75 from his teaching and consulting work for Midwestern University, the Chicago Dental Society, and the Illinois State Dental Society. (ECF No. 41 ¶ 13; ECF No. 34 ¶¶ 31–35; *see also* ECF No. 31-27 at 1.) After he stopped working in his dental practice, Caraba's total income dropped to $70,761.56 in 2019 from his teaching and consulting work, and then to $67,122.99[4] in 2020. (ECF No. 34 ¶¶ 31–35; *see also* ECF No. 31-27 at 1.)

As noted above, Caraba submitted his disability claim in April 2019, and Paul Revere began making disability payments under a reservation of rights on July 7, 2019. (ECF No. 34 ¶ 41.) Paul Revere made payments for over a year, and then informed Caraba on July 23, 2020, that it was actually denying his claim for benefits for 2019 based on its determination that he was "working in a gainful occupation in 2019." (ECF No. 34 ¶ 38.) Paul Revere continued paying benefits through September 7, 2020, however, and then sent Caraba an additional communication on September 29, 2020, stating again that it was denying his claim and would not be making any further payments, based on its determination that he was "working in a gainful occupation in

---

[4] Caraba claims in his statement of facts that he earned total wages of only $51,800.00 in 2020. (ECF No. 41 ¶ 14; ECF No. 38-6 at 1–2.) But Caraba's claim is not supported by the record evidence and is in fact inconsistent with his own admissions to Paul Revere's statement of facts. While W2s indicate that Caraba made $51,799.90 from his teaching at Midwestern University and the University of Illinois in 2020, other tax documents show (and Caraba also admits) that in 2020 he received $3,600.00 from the Illinois State Dental Society and $11,723.00 (after expenses) from the Chicago Dental Society, which would make his total earnings that year at least $67,122.99. (*See* ECF No. 34 ¶¶ 35, 37.) The Court thus accepts it as undisputed that Caraba made at least $67,122.99 in 2020.

5

2020." (*Id.* ¶ 39.) Around this time—the record is not clear exactly when—Caraba ceased paying the premiums on his Policy, and the Policy lapsed on December 9, 2020. (*Id.* ¶ 10.)

Caraba requested that Paul Revere review its decision, and on March 16, 2021, Paul Revere sent a letter to Caraba that it was re-confirming its claim decisions, stating that, because Caraba "is working in a gainful occupation, he does not satisfy the definition of Total Disability and is not eligible for Total Disability benefits under the policy." (*Id.* ¶ 40.)

### C. Procedural History

Caraba initiated this suit in the Circuit Court of Cook County, Illinois, bringing claims for breach of contract and for statutory penalties for unreasonable and vexatious denial of an insurance claim under 215 ILCS 5/155. (ECF No. 1-1.) Paul Revere timely removed the case to this District Court under 28 U.S.C. § 1441 and § 1446 based on diversity jurisdiction. (ECF No. 1.) After completing discovery, the parties filed cross-motions for summary judgment, both of which are fully briefed and ripe for decision. (ECF No. 25; ECF No. 29.)

## Legal Standard

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues of material fact are not demonstrated by the "mere existence of some alleged factual dispute between the parties," *id.* at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "[t]he controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and

opposition to the motion for summary judgment." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016).

The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: the Court must "construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). As always, however, the Court makes "only reasonable inferences, not every conceivable one." *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014); *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (the nonmovant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture."). Importantly, the mere "existence of cross-motions for summary judgment does not . . . imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## Discussion

Pending before the Court are the parties' cross-motions for summary judgment on Caraba's claims for breach of contract and statutory penalties under § 155 of the Illinois Insurance Code. To succeed on his claim for breach of contract under Illinois law,[5] Caraba must demonstrate (1) the existence of a valid contract; (2) substantial performance by Caraba; (3) a breach by Paul Revere; and (4) damages. *See Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 883 (7th Cir. 2022) (citing *Babbitt Muns., Inc. v. Health Care Serv. Corp.*, 2016 IL App (1st) 152662, 64 N.E.3d 1178, 1186). At issue is whether Paul Revere breached the Policy by denying Caraba benefits.

---

[5] The parties agree that, as this case is before the Court on diversity jurisdiction, Illinois law controls.

Caraba maintains that Paul Revere breached the Policy by denying his claim and failing to pay him disability benefits after September 2020. Paul Revere counters that it properly denied Caraba's claim because he did not meet the Policy definition of Total Disability, a prerequisite for payment of benefits. As noted above, the Policy definition of Total Disability requires that Caraba: (1) is unable to perform the important duties of his occupation; (2) is not engaged in any other gainful occupation; and (3) is receiving a physician's care, unless he submits written proof that such care would be of no benefit. (*See* ECF No. 41 ¶ 6; ECF No. 31-1 at 7.) The first and third requirements are not in dispute, but Paul Revere contends that Caraba was engaged in "other gainful occupation" through his teaching and work on behalf of the Chicago Dental Society and Illinois State Dental Society, and therefore he did not qualify for benefits. Caraba responds that the term "gainful occupation" as used in the Policy is ambiguous and should be interpreted as meaning that he is only considered gainfully employed if he is making earnings "comparable" to his pre-disability earnings. According to Caraba then, given that after April 2019 he was earning less than half of his pre-disability income, he was not engaged in any other gainful occupation and so was entitled to benefits. The parties' dispute thus turns on the meaning of the phrase "gainful occupation" as it is used in defining Total Disability under the Policy.

The same principles that apply to contract interpretation govern the interpretation of insurance policies under Illinois law. *See Rahimzadeh v. ACE Am. Ins. Co.*, No. 22 C 7056, 2023 WL 6141603, at *3 (N.D. Ill. Sept. 20, 2023) (citation omitted). Construction of an insurance policy is a question of law for the Court, and in construing the policy the Court's goal is to ascertain the intent of the parties to the contract. *See generally Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 607, 607 N.E.2d 1204, 1212 (1992) (citations omitted). "To ascertain the meaning of the policy's words and the intent of the parties, the court must construe

8

the policy as a whole, with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract." *Id.* (citations omitted). If the Policy language is unambiguous, the Court must afford the words their "plain, ordinary, and popular meaning." *Id.* If, on the other hand, "the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy." *Id.* (citations omitted).

As explained further below, the Court concludes that Caraba did not meet the Policy definition of Total Disability because the undisputed factual record demonstrates that he was employed in other gainful occupations. Because Caraba did not meet the Policy requirements for payment of benefits, Paul Revere did not breach the Policy in denying Caraba's claim.[6] Paul Revere is thus entitled to judgment on Caraba's claims as a matter of law.

Caraba argues that the term "gainful occupation" is ambiguous because it is not defined in the Policy and is subject to multiple potential interpretations. In particular, Caraba points to claims manuals that either do not require a specific income threshold for an occupation to qualify as "gainful" or define a "gainful occupation" as an occupation that provides a claimant with an income of at least 60% of the claimant's pre-disability income. Caraba claims this shows that the term "gainful occupation" is ambiguous and the Court should construe the ambiguity in his favor and find that he was not gainfully employed because he did not earn at least 60% of his pre-disability income following his disability.

---

[6] Based on the Court's resolution of this issue, it need not address Paul Revere's other arguments in support of summary judgment, including that Caraba failed to continue submitting proofs of loss for his claim after September 2020, or that Caraba failed to satisfy the request requirement for supplemental social insurance benefits by first applying to the Social Security Administration for benefits.

Paul Revere counters that a "gainful occupation" under the Policy unambiguously means an "occupation from which the insured can earn a reasonably substantial income rising to the dignity of an income or livelihood," as another court in this District once held. *See Ghazi v. Fiserv, Inc.*, 957 F. Supp. 167, 169 (N.D. Ill. 1997) (citation omitted). Paul Revere then argues that Caraba's teaching, consulting, and other work, for which he earned roughly $70,000 in annual income—more than the average person in Illinois—means that he had a gainful occupation and so was not totally disabled under the Policy.

The Court agrees with Paul Revere and concludes that "gainful occupation," as used in the Policy, is not ambiguous, and that Caraba was gainfully employed and thus ineligible for disability benefits.

Disability insurance policies typically come in two fundamentally different types: "occupational disability" policies and "general disability" policies. "An 'occupational' disability policy provides benefits if the claimant is unable to perform his regular job; a 'general' disability provision provides benefits if the claimant is unable to perform any job for which he is qualified by reason of education, training, or experience." *Hammond v. Fidelity & Guaranty Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir. 1992) (citations omitted). Accordingly, occupational policies "are far less restrictive than the general disability variety." *Stender v. Provident Life & Accident Ins. Co.*, No. 98 C 1056, 2000 WL 875919, at *4 (N.D. Ill. June 29, 2000). General disability policies do not require the claimant to be "utterly helpless to be considered disabled," but do require the claimant to be "unable to perform all the substantial and material acts necessary to the prosecution of some gainful business or occupation." *Ruder v. Commonwealth Edison*, No. 00 C 515, 2000 WL 1741921, at *9 (N.D. Ill. Nov. 22, 2000); *see also Hammond*, 965 F.2d at 431 (requiring same).

10

Because Caraba elected to purchase a general disability policy, he was entitled to benefits only if he could not perform *any* gainful occupation, regardless of how lucrative that occupation was compared to his pre-disability occupation. Therefore, the Policy unambiguously required not just that he could no longer work as a clinical dentist or could no longer make a certain percentage of his pre-disability income, but that he could not perform any gainful occupation at all—in essence, that he could not make a reasonable living, without consideration of his pre-disability income. *See Ghazi*, 957 F. Supp. at 169. The outline of coverage associated with the Policy aligns with this, both by indicating that "gainful occupation" means an occupation "that pays [a claimant] a meaningful income" and by distinguishing the Policy from one in which "income before disability is considered" when deciding disability benefits. (ECF No. 31-1 at 20.) There is no material dispute that Caraba was receiving an income after the onset of his disability that rose to the dignity of a livelihood—even if it was not the livelihood he would have preferred. Therefore, Caraba was not entitled to disability benefits.

Caraba points to the Policy's lack of explicit definition of "gainful occupation" and to the definitions of that term in outside materials, including claims manuals[7] and Social Security regulations. However, a policy term "is not ambiguous because the term is not defined within the policy or because the parties can suggest creative possibilities for its meaning," including by pointing to definitions in documents other than the policy at issue. *Lapham–Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill.2d 520, 529, 655 N.E.2d 842 (1995). And a term "that appears unambiguous at first blush might not be such when viewed in the context of the particular factual

---

[7] The Court notes that the section of Paul Revere's claims manual Caraba points to applies to group coverage and not individual policies like Caraba's. In contrast, the section that does apply to individual policies states that "a set percentage of pre-disability earnings is *not* a factor to consider when determining whether current work or employment is gainful." (ECF No. 34 ¶ 48 (emphasis added).)

setting in which the policy was issued." *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 223 Ill.2d 407, 417, 860 N.E.2d 280 (2006). Accordingly, "ambiguity exists only if the term is susceptible to more than one reasonable interpretation." *Id.*

Here, the Policy language, especially in light of the factual setting in which the Policy was distinguished from an occupational disability policy and even from alternative variations of a general disability policy that would have been more favorable to Caraba, is not ambiguous. The Policy required Caraba not to have any "gainful occupation" that provided him a meaningful income, even if that income were half of what he had earned pre-disability. Ultimately, Caraba still earned more than the median Illinoisan after the onset of his disability, and the record does not suggest that he no longer earned a reasonable living. Given this gainful occupation, Caraba was not totally disabled under the Policy and Paul Revere did not breach the Policy by rejecting his benefits claim on that basis. Therefore, summary judgment in Paul Revere's favor is appropriate.

## Conclusion

The Court grants Paul Revere's motion for summary judgment (ECF No. 29), denies Caraba's motion for summary judgment (ECF No. 25). The Court enters summary judgment in Paul Revere's favor and dismisses Caraba's claims. Enter Final Judgment. Civil case terminated.

**SO ORDERED.**  **ENTERED: August 14, 2024**

_____
**HON. JORGE ALONSO**
**United States District Judge**